Filed 2/17/16  P. v Hampton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONALD LANE HAMPTON,<br><br>    Defendant and Appellant. | D068679<br><br><br><br>(Super. Ct. No. FSB1202768) |

APPEAL from a judgment of the Superior Court of San Bernardino County, David J. Mazurek, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Amanda E. Casillas and Elizabeth Carino, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ronald Hampton of the willful, deliberate and premeditated attempted murder of Tariq Davis and shooting a firearm from a motor vehicle.  The jury also found true that in the commission of the crimes, Hampton personally used and

discharged a firearm, which caused great bodily injury, and that he committed the crimes for the benefit of, in association with, or at the direction of a criminal street gang. He appeals, contending: (1) the trial court erred by admitting a videotaped recording of a witness statement, jail classification cards, which reported Hampton admitted gang membership, and Hampton's three prior convictions as predicate offenses to prove the gang enhancement; (2) the prosecutor failed to disclose that two predicate offenses committed by others were fully or partially reversed; (3) the trial court erroneously permitted a gang expert to invade the province of the jury on witness credibility and Hampton's guilt; and (4) cumulative error warrants reversal. We find no prejudicial error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Hampton was a member of the Five Times Hometown Crips gang. Davis was a member of the 107 Hoover gang. Hampton and Davis had a dispute regarding control of drugs and prostitutes.

In June 2012, Davis, Walter Datcher, Shannon James, and Vallon Wallace were walking down a street in San Bernardino together when a red car approached them. The driver of the red car shot Davis and drove away. The car belonged to Jamie Leal, but she had loaned it to Hampton in exchange for drugs. Datcher and James identified Hampton as the shooter.

At trial, Datcher denied Hampton was the shooter. However, prior to trial, Datcher had made multiple statements identifying Hampton. Two weeks after the shooting, Datcher had told officers that Hampton shot Davis due to a dispute over drugs

2

and prostitutes. Additionally, in August 2012, Datcher had told police officers in a video recorded statement that Hampton shot Davis. Datcher explained the pretrial statements by testifying that Davis had instructed him to accuse Hampton of the shooting. In a jailhouse call, Datcher asked the caller, "Remember when [Hampton] shot [Davis]?"

The prosecution introduced evidence that Hampton was engaged in an effort to intimidate witnesses. For example, in a jailhouse call, Datcher discussed how Hampton was attempting to find witnesses who had identified Hampton as the shooter and Hampton's fellow gang members were also looking for individuals who spoke out about the case. Similarly, in a jailhouse call, Hampton's wife encouraged him to go to trial because the case was crumbling and the prosecution "might not have a witness so uh, booyao!" Hampton's wife continued by stating, "[s]o, I thin[k] if you take it to trial, and force people to talk, we gonna see if people gonna talk or people gonna disappear."

Davis did not testify at trial because he was shot and killed before trial began.

*Defense*

The defense presented one witness, Lydia Alvarez. Alvarez testified that she saw a Black male driver in a red car fire a gun from the car. She described the driver as a "chubby Black guy." She denied Hampton was the shooter and explained that the shooter was heavier and had lighter skin than Hampton.

On the day of the shooting, Alvarez told an officer that she could identify the driver of the red car. However, when Alvarez spoke to the prosecutor, Alvarez denied knowing anything about the shooting. Alvarez testified that she did not want to be involved in the case.

3

## DISCUSSION

### I. *Alleged Evidentiary Error*

A.  Videotaped Witness Statement

    1.  Additional Background

Shortly before the close of evidence at trial, the prosecutor informed the court that he had received information that Datcher had made a statement to the police implicating Hampton of shooting Davis.  Datcher made the statement during a video recorded police interview pertaining to an unrelated case.  The prosecutor gave defense counsel a copy of the tape the next morning.

Defense counsel objected to introduction of the video as late discovery.  Defense counsel explained that he had not had an opportunity to review the video and related transcript.

The trial court noted that the video concerned an unrelated case and had just come to the prosecutor's attention.  The court also noted that even if the prosecution had the evidence earlier, it was not required to disclose it because the evidence was offered purely for impeachment purposes.  The prosecutor informed the court that he only intended to introduce 13 minutes of the two and a half-hour video.  Thereafter, the court provided defense counsel with an opportunity to review the relevant 13 minutes of the video.  Ultimately, the court permitted the prosecution to introduce the 13-minute segment of the video, concluding the evidence was relevant and impeached Datcher's testimony.

The prosecution recalled Datcher and impeached him with the video. In the video, Datcher stated Hampton approached Davis driving a red car and shot him. Datcher testified that he had spoken with Davis before the police interview. Davis told Datcher what to say in relation to the case and that the best way to get rid of Hampton was to get him locked up.

2. Analysis

Hampton contends the trial court abused its discretion by admitting the video recording of Datcher's statements to the police. Specifically, Hampton argues the trial court erred in concluding the prosecutor did not have a duty to disclose the videotape on the basis that it was for impeachment purposes. We reject this argument.

Penal Code section 1054.1, subdivision (f), requires the prosecution to disclose "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial." (Undesignated statutory references are to the Penal Code.) The disclosures required by section 1054.1 "shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred. *If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately . . . .*" (§ 1054.7, italics added.) The prosecution does not have a duty to disclose impeachment information. (*People v. Tillis* (1998) 18 Cal.4th 284, 290-291.)

Before imposing any exclusion of testimony or evidence as a means of preventing prejudice to a defendant, a trial court must carefully weigh the cost to the truth-finding process of excluding otherwise relevant and probative evidence. (*People v. Gonzales*

(1994) 22 Cal.App.4th 1744, 1757-1758.) Consequently, exclusion is warranted as a remedy only when the prejudice caused by a failure to disclose is substantial and irremediable. (*Id*. at p. 1757.) We review the trial court's decision regarding enforcement of the discovery required by section 1054.1 for abuse of discretion. (*People v. Jackson* (1993) 15 Cal.App.4th 1197, 1203; *People v. Wimberly* (1992) 5 Cal.App.4th 773, 792.)

Here, even if Datcher's video recorded statement was used for more than impeachment purposes and thus subject to disclosure under section 1054.1, there was no discovery violation. Although the general rule requires the prosecutor to make disclosures 30 days prior to trial, this deadline does not apply where the information becomes known to the prosecutor at a later time. (§ 1054.7.) In such instances, disclosure shall be made immediately. (*Ibid.*) The prosecutor in this case complied with this requirement. During trial, the prosecutor informed defense counsel and the court that it had just come to the prosecution's attention via a text message that Datcher made a statement incriminating Hampton. As soon as the prosecutor learned of the evidence, he called defense counsel to provide the defense with a copy of the video, which was done the next morning. At trial, Datcher did not dispute that the prosecution had just learned of the evidence. Accordingly, the prosecutor did not violate the discovery rules and the court acted within its discretion in admitting the video evidence.

Even assuming Hampton's argument has merit, the alleged error was harmless under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1135, fn. 13.) The jury in this case heard other evidence that Datcher implicated Hampton as the shooter. Notably, the jury heard

6

evidence that two weeks after the shooting, Datcher had told officers that Hampton shot Davis due to a dispute over drugs and prostitutes. Moreover, the jury heard a jailhouse call in which Datcher asked the caller, "Remember when [Hampton] shot [Davis]?" Based on this evidence, we conclude the alleged error in admitting Datcher's videotaped statement was harmless.

B. Jail Classification Cards

At trial, the prosecution introduced evidence of four jail classification cards which reported that Hampton admitted to being a member of the Five Times Hometown Crips gang. Hampton argues the trial court erred in admitting the jail classification cards because he did not receive warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 478-479 (*Miranda*).

In *People v. Elizalde* (2015) 61 Cal.4th 523 (*Elizalde*), our high court considered "whether routine questions about gang affiliation, posed to defendant while processing him into jail on murder charges, come within *Miranda's* well-recognized booking exception." (*Id.* at p. 527.) The court held that "the questions exceeded the scope of the exception and that officers should have known these questions were reasonably likely to elicit an incriminating response because of California's criminal gang statutes and defendant's pending charges. While officers were permitted to ask these questions for institutional security purposes, defendant's un-*Mirandized* responses were inadmissible against him during the case-in-chief." (*Ibid.*)

Under the rule set forth in *Elizalde*, Hampton's jail classification cards were inadmissible against him during the case-in-chief as there was no evidence that he was

7

given *Miranda* advisements. However, as in *Elizalde*, the error was harmless beyond a reasonable doubt because Hampton's gang membership was convincingly established by other evidence. (*Elizalde*, *supra*, 6 Cal.4th at p. 542.) For example, James testified that she previously told officers that Hampton was a member of "the Five." Further, Officer Ernie Luna testified that he contacted Hampton twice in matters unrelated to this case. On those occasions, Hampton admitted to being a member of the Five Times Hometown Crips gang, was wearing gang colors, identified himself with his gang moniker, and was with another gang member. Officer Luna also observed tattoos on Hampton revealing Hampton's gang affiliation. Similarly, Officer Paul Spriggs testified that based on his contacts with Hampton and reports of other officers' contacts with Hampton, Hampton admitted gang membership, had gang tattoos, and affiliated with other Five Times Hometown Crips gang members. Lastly, during closing argument, defense counsel conceded that Hampton was a member of the Five Times Hometown Crips. Based on counsel's argument and the evidence in this case, admission of the jail classification cards was harmless beyond a reasonable doubt.

## II. *Predicate Offenses*

A. Additional Background

The prosecution sought to admit predicate offenses to prove the gang enhancement allegation. The predicate offenses included Hampton's prior convictions. Defense counsel objected, arguing there were other predicate offenses available which were not committed by Hampton and admission of Hampton's prior offenses was prejudicial. The court ruled Hampton's prior offenses were relevant to prove he was personally involved

8

in gang activities and whether his current offense was committed for the benefit of, at the direction of, or in association with other gang members for the benefit of that gang. The court noted that admission of Hampton's prior offenses was not unduly prejudicial because the prior offenses were not more serious or inflammatory than the crimes charged in his case.

The prosecution ultimately presented evidence of six predicate offenses to prove the gang allegation. Hampton committed three of those offenses and the remaining three were committed by others. The predicate offenses included:

1. Hampton's 2001 conviction for possession for sale or transportation of cocaine base;

2. Hampton's 2005 conviction for possession for sale of a controlled substance;

3. Hampton's 2007 conviction for taking a motor vehicle without consent;

4. Isaac Pendaloza's 2009 conviction for being a felon in possession of a firearm with a finding that the offense was committed for the benefit of a criminal street gang;

5. Desmone Downs's 2010 conviction for murder with a finding that the offense was committed for the benefit of the Five Times Hometown Crips; and

6. Danny Louie's 2012 conviction for carjacking and dissuading a witness with a finding that the crimes were committed for the benefit of a criminal street gang.

B. Hampton's Predicate Offenses

Hampton contends the trial court erred in admitting evidence of his three prior convictions as predicate offenses to support the gang allegation because the evidence was

unduly prejudicial under Evidence Code section 352. Hampton also argues the trial court erred in allowing the "wholesale admission of [his] prior convictions as long as they were enumerated gang crimes." We reject these arguments.

To support a true finding on a criminal street gang enhancement allegation, the prosecution must establish a "pattern of criminal gang activity," which requires a showing of two or more predicate offenses. (§ 186.22, subd. (e).) There is no settled number of predicate offenses which may be admitted to prove a gang enhancement. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1435-1436 (*Rivas*) [upholding admission of six predicate offenses]; *People v. Hill* (2011) 191 Cal.App.4th 1104, 1137-1139 [admission of eight predicate offenses committed by members of defendant's gang was not unduly cumulative].)

With respect to the introduction of evidence of a predicate offense committed by the defendant, "[a] predicate offense [may] be established by proof of an offense the defendant committed on a separate occasion." (*People v. Tran* (2011) 51 Cal.4th 1040, 1046 (*Tran*).) Further, with respect to the number of predicate offenses introduced, "although the court need not limit the prosecution's evidence to one or two separate offenses lest the jury find a failure of proof as to at least one of them, the probative value of the evidence inevitably decreases with each additional offense, while its prejudicial effect increases, tilting the balance towards exclusion." (*Id.* at p. 1049.) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create

substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

We review the trial court's rulings on the admission of predicate offenses for an abuse of discretion. (See, e.g., *Rivas*, *supra*, 214 Cal.App.4th at p. 1436 [applying abuse of discretion standard of review to defendant's contention that trial court erred in permitting prosecution to introduce evidence of excessive number of predicate gang offenses]; *Tran*, *supra*, 51 Cal.4th at p. 1050 [applying abuse of discretion standard of review to defendant's claim that trial court erred in admitting evidence of his prior conviction for purposes of proving gang predicate offense].)

Hampton's argument regarding the cumulative nature of his prior convictions and their prejudicial effect was largely rejected in *Tran*, *supra*, 51 Cal.4th at p. 1046. In that case, the prosecution established a gang's predicate offenses, as required by section 186.22, subdivision (f), by presenting evidence of crimes the defendant himself committed on behalf of the gang. On appeal, the defendant argued that in light of evidence of crimes committed by other gang members, evidence of his past crimes was cumulative and therefore unduly prejudicial. In rejecting this contention, the court stated: "[D]efendant cites no authority for the argument that the prosecution must forgo the use of relevant, persuasive evidence to prove an element of a crime because the element might also be established through other evidence. The prejudicial effect of evidence defendant committed a separate offense may, of course, outweigh its probative value if it is merely cumulative regarding an issue not reasonably subject to dispute. [Citations.] But the prosecution cannot be compelled to ' "present its case in the sanitized fashion

11

suggested by the defense." ' [Citation.]  When the evidence has probative value, and the potential for prejudice resulting from its admission is within tolerable limits, it is not *unduly* prejudicial and its admission is not an abuse of discretion."  (*Tran*, at pp. 1048-1049.)

Here, Hampton concedes that there is no settled limit on the number of predicate offenses that may be admitted to prove a gang enhancement and that the offenses do not have to be gang related.  The trial court acts within its discretion in admitting the predicate offenses when the evidence has probative value and is not unduly prejudicial. (*Tran*, *supra*, 51 Cal.4th at p. 1049.)  The predicate offenses involving Hampton were for drug-related offenses and taking a motor vehicle without consent.  This evidence had clear probative value with respect to the gang enhancement.  Further, the potential for prejudice was within tolerable limits.  (*Ibid*.)  An important factor in determining whether evidence of a defendant's other offenses is unduly prejudicial is whether it is more inflammatory than the charged crimes.  (*Id.* at p. 1047.)  As the trial court noted, Hampton's prior offenses were less serious and no more inflammatory than the crimes charged in this case.

We also reject Hampton's argument that the trial court misunderstood its discretion and the principles set forth in *Tran*, *supra*, 51 Cal.4th at p. 1046.  Contrary to Hampton's argument, the trial court did not allow the "wholesale admission" of his prior convictions and treat the decision in *Tran* as removing his ability to object to the predicate offenses. Rather, the trial court conducted a proper balancing test and found admission of Hampton's prior offenses was not unduly prejudicial.

Because the evidence was probative and not unduly prejudicial, the trial court did not abuse its discretion in admitting it. (*Tran*, *supra*, 51 Cal.4th at p. 1050.) Accordingly, we reject Hampton's related claim that in admitting the evidence the trial court deprived him of due process and a fair trial.

C. Status of Predicate Offenses

Hampton argues the prosecutor had a duty under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*), to disclose that one of the predicate offenses offered to prove the gang enhancement was reversed on appeal and another was pending appeal. Specifically, Hampton contends Downs's murder conviction was reversed one month before trial and an appeal was pending in Louie's case. Hampton alleges that without the Downs predicate offense, the remaining predicate offenses fail to establish a pattern of criminal activity within the meaning of section 186.22, subdivision (e). Alternatively, Hampton contends his trial counsel was ineffective for failing to discover the status of the Downs and Louie predicate offenses. Hampton claims he was prejudiced because the most serious predicate offense was reversed on appeal. Lastly, Hampton asserts reversal is required under the cumulative error doctrine because the prosecutor also improperly used his prior convictions as predicate offenses.

1. *Alleged Brady Violation*

The constitutional right to due process of law requires that the prosecution disclose to the defense evidence favorable to the defendant and material to guilt or punishment. (*Brady*, *supra*, 373 U.S. at pp. 86-87.) Evidence is favorable to the defendant if it either helps the defendant (e.g., is exculpatory) or hurts the prosecution (e.g., by impeaching a

13

prosecution witness). (*U.S. v. Bagley* (1985) 473 U.S. 667, 676; *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 8.) Evidence is "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (*Bagley*, at p. 682.) To prove the prosecution has violated its *Brady* duty, the defendant "must show both the favorableness and the materiality of any evidence not disclosed by the prosecution . . . ." (*In re Sassounian* (1995) 9 Cal.4th 535, 545.)

Even though "the prosecution may not withhold favorable and material evidence from the defense, neither does it have the duty to conduct the defendant's investigation for him. [Citation.] If the material evidence is in a defendant's possession or is available to a defendant through the exercise of due diligence, then . . . the defendant has all that is necessary to ensure a fair trial . . . ." (*People v. Salazar* (2005) 35 Cal.4th 1031, 1048-1049 (*Salazar*).) We apply a de novo standard of review to the issue of whether the defendant established the elements of a *Brady* claim. (*Id.* at p. 1042.)

Here, the prosecutor disclosed the predicate offenses that he intended to use to support the gang enhancement. Those predicate offenses included the Downs and Louie offenses. As Hampton concedes, information regarding the status of Downs's and Louie's convictions was readily available to him through a simple Internet search. Where, as here, the prosecution disclosed the predicate offenses and the information regarding their status was available to the defendant through exercise of due diligence, there is no *Brady* violation as he had all he needed to ensure a fair trial. (*Salazar*, *supra*, 35 Cal.4th at pp. 1048-1049.)

14

Regardless, information regarding the appellate status of the Downs and Louie convictions was not material because those offenses were admissible as predicate offenses to prove the gang allegation irrespective of whether they were reversed or partially reversed on appeal.  Subdivision (e) of section 186.22 defines " 'pattern of criminal gang activity' " as "*the commission of, attempted commission of, . . . or conviction* of two or more" enumerated offenses.  (Italics added.)  "Because section 186.22, subdivision (e) contains both the options of 'commission' or 'conviction,' the statute expressly does not require that the offense necessarily result in a conviction." (*People v. Garcia* (2014) 224 Cal.App.4th 519, 524; *In re I.M.* (2005) 125 Cal.App.4th 1195, 1207-1208 [evidence that a gang member was prosecuted for an offense, without a showing that he was convicted, was sufficient evidence of "commission" of predicate offense for pattern of criminal gang activity].)

2. *Sufficiency of Predicate Offenses*

For the same reason, we also reject Hampton's argument that without the Downs predicate offense, the remaining predicate offenses fail to establish a pattern of criminal activity within the meaning of section 186.22, subdivision (e).  Hampton bases his contention on the requirement that the most recent predicate offense must have occurred within three years of one of the earlier crimes.  (§ 186.22, subd. (e).)  Hampton urges that this requirement fails if we excise Downs's conviction from the record because without Downs's offense, Louie's 2012 offense, which was the most recent predicate offense, did not occur within three years of Pendaloza's crime.  As we have explained, a conviction is not required for a predicate offense to qualify as an offense supporting criminal street

15

gang enhancement. (*Ibid*.) All that is required is evidence that the offense was committed. (*People v. Garcia*, *supra*, 224 Cal.App.4th at p. 524.)

In this case, the evidence adequately established the Downs predicate offense. Officer Luna testified that Downs, a documented member of the Five Times Hometown Crips gang, went to a rival gang party, walked up behind an individual and shot him point blank in the back of the head. Additionally, the court admitted documentary evidence regarding the information against Downs and other court records from his case. (*People v. Gardeley* (1996) 14 Cal.4th 605, 624-626 [court found sufficient evidence of a predicate offense in an information and other court records showing that a gang member had been convicted of shooting at an inhabited building].) Therefore, regardless of the status of Downs's conviction, it could be used as a predicate offense to establish the gang allegation and we reject Hampton's argument that it must be excised from the record. We note, however, that based on the record before us, had Downs's murder conviction been reversed for insufficiency of the evidence, it would not have been a proper predicate offense as there would be no competent evidence regarding whether the offense had in fact been committed by a gang member.

3. *Alleged Ineffective Assistance*

Hampton alternatively contends his trial counsel was ineffective for failing to discover the status of the Downs and Louie predicate offenses. We reject this argument.

To establish ineffective assistance of counsel, Hampton must show, by a preponderance of the evidence, that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the

16

result would have been different.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)  In determining whether counsel's performance was deficient, we exercise deferential scrutiny and "assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act."  (*People v. Ledesma*, at p. 216.)  We presume that counsel's conduct fell within the wide range of reasonable professional assistance and tactical errors are generally not deemed reversible.  (*People v. Maury* (2003) 30 Cal.4th 342, 389.)  Our review is limited to the record on appeal and we must reject a claim of ineffective assistance if the record sheds no light on why counsel acted or failed to act in the manner challenged unless (1) counsel was asked for and failed to provide a satisfactory explanation or (2) there simply could be no satisfactory explanation.  (*People v. Burgener* (2003) 29 Cal.4th 833, 880.)

Here, the record is unclear as to whether defense counsel investigated the status of Downs's and Louie's convictions.  The record reveals, however, that Hampton's counsel chose to focus the defense on the identity of the shooter rather than the gang allegation.  In fact, defense counsel admitted that Hampton was a member of the gang and that fellow gang members engaged in criminal activity.  Thus, counsel's failure to introduce evidence that Downs's conviction was reversed and Louie's partially reversed may have been a part of the trial strategy to focus on the identity of the shooter.  A reviewing court does not second guess trial counsel's strategy and tactical choices.  (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1059.)

17

Regardless, even if defense counsel had investigated Downs's and Louie's convictions, Hampton has not shown prejudice because, as we explained, there is no requirement that the predicate offenses must be convictions. (§ 186.22, subd. (e); *People v. Garcia*, *supra*, 224 Cal.App.4th at p. 524.) Thus, whether or not defense counsel knew of the status of the convictions, the evidence was admissible to prove a pattern of criminal gang activity.

4. *Alleged Cumulative Error*

Hampton asserts reversal is required under the cumulative error doctrine because the prosecutor also improperly used his prior convictions as predicate offenses. Having rejected Hampton's argument regarding the prosecutor's use of his crimes as predicate offenses, we also reject Hampton's cumulative error argument.

III. *Gang Expert Testimony*

A. Additional Background

Officer Luna testified regarding his investigation of the case and as the prosecution's gang expert. He stated the Five Times Hometown Crips gang had approximately 80 documented members. The gang's primary activities included narcotics sales, vehicle thefts, weapons charges, and violent crimes, including assaults, robberies, murders, and attempted murders.

When discussing the reluctance of witnesses to testify, the prosecutor and Officer Luna engaged in the following discussion:

> "[Prosecutor]: And, Officer Luna, as you evaluated and got to give your opinion as to witnesses in court and the way they testified as well as how they interacted with you when you were there when

18

they were served with subpoenas, how does—based on your training and experience, how does that affect your opinion as to whether or not this crime is benefiting Five Times based on what's going on between individuals in custody and witnesses out of custody?

"[Officer Luna]: *It shows that the Five Times is a violent gang. A member from the Five Time has shot at a person point blank in the middle of the street—*

"[Defense Counsel]: Object to that. Assumes facts not in evidence and offers an opinion —

"THE COURT: Overruled.

"[Defense Counsel]:—opinion as—

"THE COURT: Overruled.

"[Officer Luna]: — in broad daylight. Now witnesses are coming forward. [¶] I don't know if you heard testimony with the witnesses but none of them wanted to be here. . . . [¶] All the statements that we took were either right on that they identified [Hampton], but here in court they said that they never said that, that we force fed them the information." (Italics added.)

Later, the prosecutor and Officer Luna engaged in the following colloquy:

"[Prosecutor]: Are there any tangible benefits to the reputation of Five Time Hometown Crips that you can point to by the defendant attempting to murder someone in open daylight?

"[Officer Luna]: A gang member committing murder for the benefit of the gang is like the ultimate [thing] a gang member can do to achieve status, but not only for himself but for the gang. It shows as gang members, as you hear words 'the streets,' 'streets talk,' everyone knows that this incident occurred. *They know that [Hampton] did it.* People made reference that they know he's from 'the Five.' So people are going to know if you mess with a Five Time's gang member, they are going to come back and shoot you. [¶] They assaulted him. They hit him over the head with a baseball bat or stick; *he came back and shot him point black [sic]. It shows you don't mess with Five Time's gang members.* It establishes fear in the community. It establishes fear amongst other gang members and it

19

boasts that particular gang and that particular gang member's status within the gang." (Italics added.)

Officer Luna also testified over defense counsel's objections that the crimes of shooting from a motor vehicle and attempting to commit murder benefit the Five Times Hometown Crips gang. Based on Officer Luna's investigations, he opined that the Five Times Hometown Crips gang engaged in a pattern of criminal activity.

B. Analysis

Hampton argues Officer Luna provided improper expert testimony. Specifically, Hampton contends Officer Luna erroneously expressed an opinion that Hampton committed the charged and some uncharged crimes for the benefit of the Five Times Hometown Crips gang. He also contends the prosecutor's questions were not properly phrased as hypotheticals. Hampton further argues Officer Luna improperly opined that the Five Times Hometown Crips gang engaged in a pattern of criminal activity. Lastly, Hampton alleges Officer Luna provided improper opinion testimony on the demeanor and credibility of witnesses Leal, James, and Datcher.

"Generally, an expert may render opinion testimony on the basis of facts given 'in a hypothetical question that asks the expert to assume their truth.' " (*People v. Gardeley*, *supra*, 14 Cal.4th at p. 618.) "Expert testimony repeatedly has been offered to show the 'motivation for a particular crime, generally retaliation or intimidation,' and 'whether and how a crime was committed to benefit or promote a gang.' " (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550.)

20

In *People v. Vang* (2011) 52 Cal.4th 1038 (*Vang*), our high court addressed the "propriety of permitting the gang expert to respond to the hypothetical questions the prosecution asked regarding whether defendants' assault on [the victim] was gang related." (*Id*. at p. 1044.) The court approved the use of hypothetical questions in such cases, explaining, "As applied here, this rule means that the prosecutor's hypothetical questions had to be based on what the evidence showed *these* defendants did, not what someone else might have done. The questions were directed to helping the jury determine whether these defendants, not someone else, committed a crime for a gang purpose. Disguising this fact would only have confused the jury." (*Id*. at p. 1046.)

However, "in some circumstances, expert testimony regarding the specific defendants might be proper." (*Vang*, *supra*, 52 Cal.4th at p. 1048, & fn. 4.) The *Vang* court explained that expert testimony might be prohibited regarding specific defendants not because expert testimony might embrace the ultimate issue to be decided by the trier of fact, but because it does not assist the trier of fact, who is as competent as the expert witness to weigh the evidence and draw a conclusion on the issue of guilt. (*Id.* at p. 1048.) "Despite the circumstance that it is the jury's duty to determine whether the prosecution has carried its burden of proof beyond a reasonable doubt, opinion testimony may encompass 'ultimate issues' within a case." (*People v. Prince* (2007) 40 Cal.4th 1179, 1227.)

Erroneous admission of expert testimony is governed by the *Watson* standard and requires reversal only if it is reasonably probable the verdict would have been more

21

favorable to the defendant in the absence of the error. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836; *People v. Venegas* (1998) 18 Cal.4th 47, 93.)

Here, on the issue of whether the gang expert opined about Hampton's guilt concerning the charged crimes, we conclude the prosecutor should have framed his questions in the form of hypotheticals and, in response to the prosecutor's poorly framed questions, the expert improperly opined directly about Hampton himself. For example, the prosecutor asked, "[a]re there any tangible benefits to the reputation of Five Time Hometown Crips that you can point to *by the defendant attempting to murder someone in open daylight*?" In explaining his affirmative response, the gang expert stated that the crime establishes fear in the community and other gang members because "they know that [Hampton] did it." This portion of the gang expert's testimony specifically referencing Hampton was unhelpful to the jury because the jury was equally equipped to reach that conclusion.

Similarly, Officer Luna's testimony that "[a] member from the Five Time has shot at a person point blank in the middle of the street" was a matter that the jury was equipped to decide. On this point, however, the trial court properly overruled defense counsel's objection because the expert's statement was part of his testimony explaining inconsistencies in witness statements before and during trial. This information was helpful to the jury. Further, Officer Luna's testimony was appropriate to the extent it was based on his investigation of the case and interactions with witnesses during the investigation. Lastly, the testimony was merely cumulative of other testimony regarding why witnesses were reluctant to testify in this case.

22

Although a portion of Officer Luna's testimony invaded the province of the jury, we conclude that any error was harmless. The prosecutor asked the expert specifically about whether the gang would benefit from Hampton attempting to murder someone in broad daylight. The expert's response explained how the crime of attempted murder benefits the gang. Although the expert referenced Hampton, the expert did not testify about Hampton's specific knowledge or intent. Instead, the expert's reference to Hampton was an effort to explain how the crime of attempted murder instills fear in others. Therefore, the expert did not direct the jury to find Hampton guilty.

Further, the trial court instructed the jury regarding how to interpret expert testimony: "Witnesses were allowed to testify as experts and to give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence." We presume the jury followed this instruction. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Lastly, in light of the overwhelming evidence establishing Hampton's guilt, it is not reasonably probable he would have obtained a more favorable result absent the claimed error.

23

On Hampton's remaining challenges to Officer Luna's testimony about whether the Five Times Hometown Crips engaged in a pattern of criminal activity, Hampton's uncharged crimes, and the fear and reluctance of witnesses to testify, we conclude Hampton forfeited his arguments by failing to object below. The failure to object to a gang expert's testimony at trial forfeits any contention regarding that testimony on appeal. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 818-819.) Contrary to Hampton's argument, his trial counsel's failure to object did not constitute ineffective assistance.

Hampton has not shown that his trial attorney failed to act in a manner to be expected of reasonably competent counsel and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 688-694.) Officer Luna's testimony regarding Hampton's uncharged crimes of selling drugs and being involved in the prostitution trade was cumulative of other evidence at trial. For example, Datcher had told officers that Hampton shot Davis due to a dispute over drugs and prostitutes. Additionally, Leal testified that she had loaned her car to Hampton in exchange for cocaine. Similarly, there was other evidence at trial that witnesses were fearful and reluctant to testify. Thus, Officer Luna's testimony about the demeanor of witnesses and Hampton's uncharged crimes was not prejudicial. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1119 [it was not reasonably probable that an alleged error in admitting evidence, which was cumulative of other testimony, affected the verdict].)

Likewise, Hampton has not shown his counsel's failure to object to Officer Luna's testimony about whether the Five Times Hometown Crips engaged in a pattern of

24

criminal activity was deficient. Instead, the record reveals that counsel's decision not to object may have been a tactical decision. Defense counsel admitted that Hampton was a member of the gang and that fellow gang members engaged in criminal activity. Rather than challenge the gang testimony, defense counsel chose to concentrate on whether Hampton was the shooter. We exercise deferential scrutiny when reviewing claims of ineffective assistance of counsel and will not "second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.) Accordingly, we reject Hampton's claim of ineffective assistance.

### IV. *Cumulative Error*

A series of errors, though harmless when considered independently, may in some circumstance rise to the level of prejudicial reversible error. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

Here, Hampton asserts the cumulative effect of the alleged errors raised on appeal resulted in a denial of his right to a fair trial. As discussed above, a portion of the gang expert's testimony invaded the province of the jury. The error was harmless individually. For the same reasons, we conclude there is no reasonable possibility that the cumulative effect of that error along with Hampton's remaining alleged errors affected the jury's verdict. Consequently, the accumulation of the claimed errors did not deprive Hampton of a fair trial.

DISPOSITION

The judgment is affirmed.

McINTYRE, Acting P. J.

WE CONCUR:

AARON, J.

PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.